**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CHARLES NOLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-4092-KGS |
| | ) |
| BRIDGESTONE AMERICAS | ) |
| TIRE OPERATIONS, LLC, | ) |
| *f/k/a Bridgestone Firestone* | ) |
| *North American Tire, LLC*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Charles Noll brings this product liability action against Bridgestone Americas Tire Operations, the successor to certain liabilities of the Firestone Tire and Rubber Company, which previously manufactured and sold vehicle rim components. Plaintiff sustained serious injuries when a tire and the multi-piece rim components attached to the tire separated during inflation. This matter comes before the court upon Defendant's Motion for Summary Judgment (ECF No. 70). For the reasons explained below, the motion is denied.

**I.    Legal Standard Governing Summary Judgment Motions**

Summary judgment is appropriate if the moving party demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A "genuine dispute" exists if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[2]  A fact is "material" only if it "might affect the outcome of the

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

suit under the governing law."[3]  The court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[4]

The movant bears the burden of establishing the lack of any genuine issues of material fact and entitlement to judgment as a matter of law.[5]  To meet this standard, the moving party need not negate the claims of the opposing party; instead, the moving party can simply point out the absence of evidence for the opposing party on an essential element of that party's claim.[6]

If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleadings but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7]  Sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[8]

## II.  Background

Before discussing the facts of this case, the court must address two matters that bear on this undertaking.  First, the court notes that the manner in which plaintiff has set forth his statement of facts has complicated the court's task of identifying controverted facts.  Instead of responding to the substance of each of defendant's factual allegations, plaintiff sets forth a separate recitation of facts.

---

[3] *Anderson*, 477 U.S. at 248.

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[6]  *Celotex*, 447 U.S. at 323, 325.

[7] *Thom*, 353 F.3d at 851 (citing Fed. R. Civ. P. 56(e)).

[8] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

At the end of each paragraph, plaintiff provides the number of each of defendant's factual allegations that plaintiff's statement of facts purportedly controverts. However, many of plaintiff's factual allegations, and the portions of the record cited in support, do not actually controvert or address the substance of defendant's statement of facts, as plaintiff suggests.[9]

Second, defendant argues some of the material plaintiff cites in support of his statement of facts is not presented in a form that would be admissible in evidence.[10] Defendant points to a 1975 internal memorandum from the Budd Company, a nonparty to this action, and argues the memo itself is inadmissible hearsay and the memo also contains inadmissible hearsay. However, this document and several similar documents plaintiff has presented support facts bearing on plaintiff's contention that a fraud/intentional misrepresentation exception applies to the Kansas Product Liability Act's statute of repose.[11] As discussed in further detail below, this memorandum and order does not address this statutory exception because apart from this exception, genuine issues of material fact preclude summary judgment on the issue of whether the multi-piece rim had exceeded its useful safe life. Accordingly, the court has not considered the Budd Company memorandum and similar documents in reaching its decision. With these preliminary matters in mind, the court now turns to the facts.

Plaintiff sustained injuries on June 20, 2008, when components of the subject RHP multi-

---

[9] *See* Def.'s Reply Mem. in Support of its Mot. for Summary J. at 2, ECF No. 79 (providing examples of this occurrence); *see, e.g.,* Pl.'s Mem. of Law in Opp'n ¶ 2, ECF No. 76 (stating that this fact controverts ¶ 17 of defendant's statement of facts; however, plaintiff's statement, "The truck has not been used since September of 2008," actually is in agreement with a portion of defendant's ¶ 17).

[10] *Id.*

[11] *See* K.S.A. 60-513(b) (setting forth a ten-year statute of repose); *see also* K.S.A. 60-3303(b)(2)(B) (setting forth the fraud/intentional misrepresentation exception to the statutory presumption of when a product exceeds its useful safe life).

piece rim assembly separated as he was adding air to the tire that was mounted on the subject rim components. The Steel Products Division of The Firestone Tire and Rubber Company manufactured and sold certain rim components from approximately the 1930s until 1986. Although defendant has never manufactured this product, it is the successor to certain liabilities of Firestone with respect to rim components Firestone manufactured.

The tire and multi-piece rim at issue were mounted on a 1970 General Motors pick-up truck. Firestone designed, manufactured, and sold the subject RHP rim base to The Kelsey-Hayes Company in 1970. Kelsey-Hayes manufactured the subject disc, affixed the subject rim base to the subject disc, and sold the finished wheel in 1970. During the years the truck and subject multi-piece rim were in use, they underwent wear and tear—the extent and significance of which the parties dispute. The truck was used on a farm for a number of years and was stored outside for a period of time. The inner tube had been patched several times, including once on the day of the accident. The multi-piece rim also showed some outward signs of aging, such as rust.

Plaintiff had some experience servicing tire trucks and rims, including multi-piece rims, prior to the accident. However, on the day of the accident, plaintiff did not utilize certain safety procedures, such as inflating the tire inside a tire cage or using a clip-on air chuck or in-line pressure gauge. Plaintiff is also identified on Firestone mailing lists as having been sent publications that included warnings and instructions for servicing truck tires and rims.

**III.    Discussion**

Under Kansas law, product liability claims are governed by the Kansas Product Liability Act ("KPLA").[12] Pursuant to the KPLA, a plaintiff's theories of recovery—such as strict

---

[12] K.S.A. 60-3301 *et seq.*

liability, negligence, and others—are merged into one legal theory: a product liability claim.[13] Nevertheless, Kansas law "recognizes three ways in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and (3) a design defect."[14] In this case, plaintiff alleges the multi-piece rim at issue was both defective and unreasonably dangerous. He also alleges Firestone breached its duty to provide adequate warnings about the safe use of the product.[15]

Defendant seeks summary judgment on all of plaintiff's claims. Highly summarized, defendant contends plaintiff has not presented sufficient evidence to rebut the statutory presumption that the multi-piece rim in question had exceeded its useful safe life. Therefore, defendant argues it is entitled to summary judgment on plaintiff's strict liability theory of recovery for the alleged defective design and sale of the product at issue. Defendant also contends plaintiff's negligence theory should be dismissed because the risk associated with the product should have been apparent to an ordinary user and also because plaintiff likely understood the risk, because plaintiff lacks evidence to establish proximate causation, and because plaintiff has failed to designate a proper expert on the issue of the sufficiency of Firestone's warnings. The court addresses each of these issues in turn.

### A. Useful Safe Life Presumption

The KPLA provides that a viable product liability claim can only arise during the

---

[13] *Samarah v. Danek Med., Inc.*, 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (citing *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1311 (Kan. 1993)); K.S.A. 60-3302(c).

[14] *Hiner v. Deere & Co.*, 161 F. Supp. 2d 1279, 1282-83 (D. Kan. 2001), *rev'd in part on unrelated grounds*, 340 F. 3d 1190 (10th Cir. 2003).

[15] Plaintiff additionally asserts a loss-of-consortium claim on behalf of his wife, which is not directly the subject of defendant's summary judgment motion.

product's useful safe life.[16]  The useful safe life begins at the time of delivery of the product and extends for the time period in which the product would normally be likely to be used in a safe manner.[17]  When the harm giving rise to the product liability claim occurs more than ten years after delivery, K.S.A. 60-3303(b)(1) creates a presumption that the harm was caused after the expiration of the product's useful safe life.

The parties disagree as to the appropriate evidentiary standard plaintiff is required to satisfy at the summary judgment stage when attempting to rebut the KPLA's useful safe life presumption.  Citing a Kansas Court of Appeals opinion, plaintiff argues the proper standard is preponderance of the evidence.[18]  This district has rejected an identical argument, reasoning that the court is bound by U.S. Supreme Court precedent dictating that ruling on a summary judgment motion implicates the substantive evidentiary standard of proof that would be applied at trial.[19]  Therefore, a plaintiff may rebut the statutory presumption by clear and convincing evidence that the product had not exceeded its useful safe life.[20]  Under Kansas law, "clear and convincing evidence" is evidence that shows the truth of facts asserted is highly probable.[21]

The KPLA provides several examples of evidence that is "especially probative" in

---

[16] K.S.A. 60-3303(a)(1).

[17] *Id.*

[18] *See Baumann v. Excel Indus., Inc.*, 845 P.2d 65, 71 (Kan. Ct. App. 1993) (holding the clear-and-convincing standard of evidence at the summary judgment stage is unique to libel proceedings and applying a preponderance-of-the-evidence standard to a summary judgment motion raising the KPLA's statute of repose).

[19] *See Grider v. Positive Safety Mfg. Co.*, 887 F. Supp. 251, 253 n.2 (D. Kan. 1995) (citing *Anderson*, 477 U.S. at 252); *see also All W. Pet Supply Co. v. Hill's Pet Prods.*, 840 F. Supp. 1426, 1431 (D. Kan. 1993) (reaching the same conclusion); *Kirk v. Gen. Motors Corp.*, No. 88-2342-0, 1989 WL 103632, at *2 (D. Kan. Aug. 31, 1989).

[20] K.S.A. 60-3303(b)(1).

[21] *In re B.D.-Y.*, 187 P.3d 594, 602 (Kan. 2008).

determining whether a product's useful safe life has expired:

    (A)    The amount of wear and tear the product had been subject;

    (B)    the effect of deterioration from natural causes, and from climate and other conditions under which the product was used and stored;

    (C)    the normal practices of the user, similar users, and the product seller with respect to the circumstances, frequency and purpose of the product's use, and with respect to repairs, renewals and replacements;

    (D)    any representations, instructions or warnings made by the product seller concerning the proper maintenance, storage and use of the product or the expected useful safe life of the product; and

    (E)    any modification or alteration of the product by a user or third party.[22]

In an effort to rebut the useful safe life presumption, plaintiff presents the following evidence: Plaintiff's expert opines that the multi-piece wheel was still operating within its useful safe life, that the components of the tire and rim were free from major damage or deterioration, and that the rust on the rim was superficial.[23] The expert also believes the rim was not altered or modified.[24] Plaintiff also presents some more general evidence that this type of multi-piece rim can have a lengthy useful safe life. He points to the deposition testimony of Dennis Whalen, defendant's corporate representative, who stated steel wheels such as the one involved here, could have a "virtually indefinite" useful safe life depending on their condition.[25] He testified

---

[22] K.S.A. 60-3303(a)(1)(A)-(E).

[23] Investigation and Failure Analysis of the Explosive Separation of an RHP Multi-Piece Rim Assembly Comprised of Firestone Components at 2-10, ECF No. 76-4.

[24] *Id.* at 9.

[25] Dep. of Dennis E. Whalen 87:8-88:23, ECF No. 76-6.

Firestone did not advise consumers these wheels should be replaced or discarded after a certain period of time.[26] He further testified he had seen multi-piece wheels that were thirty or forty years old that were still in serviceable condition.[27]

In contrast to the evidence plaintiff presents, defendant's experts conclude that, in this case, the wheel and side ring were rusted, corroded, pitted, and deteriorated, and that there was a serious amount of metal loss in the areas where the components lock together, which the experts contend is significant because metal loss would mean that component pieces would not be able to hold together during tire inflation.[28] Defendant's experts believe the subject rim components were unserviceable and were in a significantly different physical condition at the time of the accident than they were at the time of their manufacture. Defendant also argues the multi-piece rim had undergone extensive wear and tear, pointing out the tire tube had been patched several times and that the truck was used on farms and had been stored outside during multiple occasions. In addition, defendant attacks the opinions of plaintiff's expert. Defendant notes Dr. Huerta gave deposition testimony indicating he did not measure the extent of the corrosion or metal loss on the rim components. Defendant also notes that at one point, Dr. Huerta testified the side ring was not in a serviceable condition prior to the accident.[29] In fairness, Dr. Huerta also noted the side ring would appear serviceable to the average user; the rim base was in a serviceable condition, and he noticed no major issues with the tire.[30]

---

[26] *Id.* at 89:10-22.

[27] *Id.* at 92:1-3.

[28] Dep. of William E. Black, Ph.D. 72:7-21, 95:10-16, ECF No. 72-8.

[29] Dep. of Michael Huerta, Ph.D., P.E. 161:5-162:9, ECF No. 72-11.

[30] *Id.* at 161:11-162:23.

In evaluating a motion for summary judgment under Fed. R. Civ. P. 56, it is not the court's role to weigh the evidence or to assess the credibility of witnesses, particularly when defendant has declined to file a motion seeking to limit or exclude Dr. Huerta's testimony.[31] The issue is whether a jury could reasonably find plaintiff presented sufficient evidence to rebut the statutory presumption that the product had exceeded its useful safe life and whether there are genuine issues of material fact as to whether the useful safe life of the product had expired.[32] In this case, there are material issues of fact regarding the extent of any product deterioration and whether such deterioration was superficial or consequential. The determination of this issue largely hinges on the credibility of the expert witnesses, which is the province of the jury. Considering plaintiff's evidence, as previously summarized, the court finds he has met his burden. Plaintiff has presented sufficient evidence for a jury to find he has rebutted the statutory presumption.

In addition to arguing the multi-piece rim had not exceeded its useful safe life, plaintiff also argues two statutory exceptions to the KPLA's useful safe life provision apply to the facts of this case. K.S.A. 60-3303(b)(2)(B) provides that the ten-year period of repose "does not apply if the product seller intentionally misrepresents facts about its product, or fraudulently conceals information about it, and that conduct was a substantial cause of the claimant's harm." The KPLA also provides an exception for latent defects. K.S.A. 60-3303(b)(1)(D) states in pertinent

---

[31] *See* Pretrial Order at 32, ECF No. 68 ("All motions to exclude testimony of expert witnesses . . . shall be filed 28 days before trial . . . but, if such a motion as a practical matter will be case-dispositive, or if an evidentiary hearing on the motion is reasonably anticipated, then this deadline shall be set in accordance with the dispositive motion deadline. . . ").

[32] *Gorman v. Best W. Int'l*, 941 F. Supp. 1027, 1031 (D. Kan. 1996); *see also Kirk*, Civ. A. No. 88-2342-O, 1989 WL 103632, at *2 ("The question becomes whether a jury could reasonably find either that the plaintiff proved his case by clear and convincing evidence or that he did not.")

part that the ten-year period of repose does not apply if the "injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery[.]" The court has already ruled there are genuine issues of material fact as to whether the product has exceeded its useful safe life, and therefore, the statute of repose cannot bar plaintiff's action at this stage of the proceedings. Accordingly, the court will not address the statutory exceptions.[33]

### B. Failure to Warn

Defendant argues plaintiff's failure to warn claim should be dismissed for reasons unrelated to the KPLA's statute of repose. Under Kansas law, a failure-to-warn claim against a manufacturer is measured by reasonableness under the circumstances.[34] The KPLA, however, limits a manufacturer's duty to warn in certain instances. K.S.A. 60-3305 provides that the duty to warn shall not extend:

> (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;
>
> (b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

---

[33] *See Baughn v. Eli Lilly and Co.*, 356 F. Supp. 2d 1166, 1173 n.7 (D. Kan. 2005) (declining to address each KPLA exception plaintiffs asserted because plaintiffs had already established genuine issues of material fact as to two of the exceptions); *Koch v. Shell Oil Co.*, 8 F. Supp. 2d 1264, 1268 (D. Kan. 1998) (stating that if any of the KPLA's exceptions apply, plaintiff's claim is not barred by the statute of repose).

[34] *Humes v. Clinton*, 792 P.2d 1032, 1043 (Kan. 1990) ("The test to determine [the] adequacy of a warning is whether the warning is 'reasonable under the circumstances.'"); *Miller v. Lee Apparel Co. Inc.*, 881 P.2d 576, 587 (Kan. Ct. App. 1994) (same) (quoting *Richter v. Limax Int'l, Inc.*, 822 F. Supp. 1519, 1521 (D. Kan. 1993)).

> (c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.

In short, "Kansas law does not impose a duty to warn of dangers actually known to the product user, or of obvious common dangers or generally known risks connected with the use of a product."[35] In this case, defendant argues the failure-to-warn claim is barred because plaintiff had "extensive experience" working with rims and tires and knew it was critically important to follow safety instructions. For example, plaintiff answered affirmatively in his deposition when asked if he was familiar with multi-piece rims.[36] He also stated he remembered first servicing a multi-piece rim in 1965 and agreed with defense counsel's statement that for the last forty-five years, plaintiff has known how to change a tire on a multi-piece rim.[37] Plaintiff further testified he was aware there were risks and dangers associated with multi-piece rims and accidents could occur if certain safety procedures were not followed.[38] Plaintiff is also identified on Firestone mailing lists as having been sent publications that included warnings and instructions for servicing tires and rims.[39] Notably, plaintiff testified he did not recall receiving these warnings.[40]

This evidence merely indicates plaintiff had *some* experience with multi-piece rims and

---

[35] *Duffee v. Murray Ohio Mfg. Co.*, 879 F. Supp. 1078, 1082 (D. Kan. 1995), *aff'd*, 91 F. 3d 1410 (10th Cir. 1996).

[36] Dep. of Charles Noll 45:17-20, ECF No. 72-9.

[37] *Id.* at 46:25-47:19.

[38] *Id.* at 64:9-65:7; *see also id.* at 58:14-60:23 (detailing the types of safety procedures with which plaintiff was familiar and which safety procedures he did nor did not utilize).

[39] Pretrial Order (Stipulations Section) at 4, ECF No. 68.

[40] Dep. of Charles Noll 47:24-48:5, ECF No. 76-2.

the safety issues associated with servicing them. It does not conclusively establish plaintiff actually knew of the alleged danger or that he possessed training, experience, education, or special knowledge about multi-piece rims such that he should have appreciated the risk.[41] Accordingly, based on the evidence presented, the court finds the sophisticated-user defense does not bar plaintiff's failure-to-warn claim at this stage of the proceedings.

Defendant also briefly argues plaintiff lacks evidence to show proximate causation. The court rejects this argument. Causation is normally a question of fact for the jury to decide.[42] Moreover, "[u]nder Kansas law, a manufacturer's failure to provide an adequate warning creates a rebuttable presumption of causation."[43] Defendant does not contend there are no material issues of fact in dispute with regard to the sufficiency of Firestone's warnings. Indeed, the parties obviously have conflicting views on this subject, both of which find some support in the record. The only argument raised with regard to sufficiency of Firestone's warning involves plaintiff's expert, Dr. Huerta, whom defendant contends is not qualified to render an opinion regarding the sufficiency of Firestone's warnings. Again, defendant declined to file a motion seeking to limit or exclude Dr. Huerta's testimony, and therefore the court lacks the necessary information to address this issue. Moreover, defendant points to no authority suggesting expert

---

[41] *See Pfeiffer v. Eagle Mfg. Co.*, 771 F. Supp. 1133, 1141 (D. Kan. 1991) ("[M]ere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery.") (citing *Brooks v. Dietz*, 545 P.2d 1104, 1113 (Kan. 1976)); *see also Meyerhoff v. Michelin Tire Corp.*, 852 F. Supp. 933, 943-45 (D. Kan. 1994) (denying defendant's motion for judgment after trial on the issue of the adequacy of a tire manufacturer's warning and concluding that tire manufacturer's evidence that the deceased truck driver had performed a number of tire repairs and was aware of instances in which tires had exploded did not establish, as a matter of law, that the deceased truck driver "was such an experienced user that he should have fully appreciated the risk he was undertaking in attempting to repair and reinflate the Michelin truck tire").

[42] *Garay v. Mo. Pac. R. Co.*, 38 F. Supp. 2d 892, 899 (D. Kan. 1999) (citing *McCleary v. Boss*, 955 P.2d 127, 128 (Kan. Ct. App. 1997)).

[43] *Patton v. TIC Untied Corp.*, 77 F.3d 1235, 1242 (10th Cir. 1996) (citing *Ritcher v. Limax Int'l, Inc.*, 45 F.3d 1464, 1471-71 (10th Cir. 1995)); *Wooderson v. Ortho Pharm. Corp.*, 681 P.2d 1038, 1057 (Kan. 1984).

testimony is required for a failure-to-warn theory. This district has addressed this issue and concluded that while expert testimony may prove helpful to a jury, "Kansas law does not require expert testimony to prevail on a failure to warn claim."[44] For these reasons, the court denies defendant's summary judgment motion.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 70) is hereby denied.

**IT IS SO ORDERED.**

Dated this 28th day of September, 2011, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[44] *Burton v. R.J. Reynolds Tobacco Co.*, 208 F. Supp. 2d 1187, 1197 (D. Kan. 2002).